UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION 5:16-CV-00158-TBR

PEMBROKE HEALTH FACILITIES, L.P.  PLAINTIFFS
*d/b/a* CHRISTIAN HEIGHTS NURSING AND
REHABILITATION CENTER, *et al.*

v.

NANCY FORD, *et al.*  DEFENDANTS

**Memorandum Opinion and Order**

This matter is before the Court upon two motions. Defendants move to dismiss Plaintiffs' complaint, and Plaintiffs move to compel arbitration and enjoin Defendants from further pursuing related state court litigation. [DN 7; DN 11.] Both motions have been fully briefed and are ripe for adjudication. For the following reasons, Defendants' motion to dismiss [DN 7] is DENIED, and Plaintiffs' motion to compel arbitration [DN 11] is GRANTED IN PART and DENIED IN PART.

**I. Facts and Procedural History**

The facts relevant to the instant motions are undisputed. For approximately twenty-one days in 2015, Ondice Eugene Ford resided at Christian Heights Nursing and Rehabilitation Center in Pembroke, Kentucky. [DN 7-1 at 1.] During his stay, Nancy Ford and Tammy Jones, Eugene's wife and daughter, allege Eugene "suffered physical and emotional injuries due to inadequate care, and [his] health and physical condition deteriorated beyond that caused by the normal aging process." [*Id.* at 2.] Sadly, Eugene passed away. Nancy and Tammy filed suit in

Christian County, Kentucky Circuit Court against various persons and entities associated with Christian Heights. That case is styled *Ford, et al. v. Pembroke Health Facilities, L.P., d/b/a/ Christian Heights Nursing and Rehabilitation Center, et al.*, Civil Action No. 16-CI-00846. *See* [DN 1-3.] In their state suit, Nancy and Tammy assert negligence, loss of spousal consortium, and wrongful death claims. *See* [*id.*]

In turn, Plaintiffs filed suit in federal court, naming Nancy and Tammy as defendants.[1] *See* [DN 1.] They claim that a document executed by Nancy, Eugene's power of attorney, requires all of Defendants' claims in the Christian Circuit Court action be sent to arbitration. That document, entitled the "Alternative Dispute Resolution Agreement – Kentucky," states that Eugene and the nursing home "voluntarily agree that any disputes covered by this Agreement . . . that may arise between the Parties shall be resolved exclusively by an ADR process that shall include mediation and . . . binding arbitration." [DN 1-2 at 1.] The Agreement was signed by Nancy Ford and Ashley West, the nursing home's business manager. [*Id.* at 5.]

In pertinent part, the Agreement provides that it applies to "any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Center that would constitute a legally cognizable cause of action in a court of law sitting in the Commonwealth of Kentucky." [*Id.* at 2.] Any arbitration "shall be conducted by a Neutral and administered by an independent,

---

[1] The plaintiffs in this action are Pembroke Health Facilities, L.P., d/b/a Christian Heights Nursing and Rehabilitation Center; Kentucky Partners Management LLC; Preferred Care Partners Management Group, LP; and Preferred Care of Delaware, Inc., d/b/a Preferred Care, Inc.

impartial entity" pursuant to "the Extendicare Health Services, Inc. Alternative Dispute Resolution Rules of Procedure . . . then in effect." [*Id.* at 2-3.] Further, the fourth page of the Agreement contains conspicuous language regarding the waiver of a right to a jury trial:

> **THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT BY ENTERING INTO THIS AGREEMENT THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED BY A COURT OF LAW OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN. THIS AGREEMENT GOVERNS IMPORTANT LEGAL RIGHTS. YOUR SIGNATURE BELOW INDICATES YOUR UNDERSTANDING OF AND AGREEMENT TO THE TERMS SET OUT ABOVE. PLEASE READ IT COMPLETELY, THOROUGHLY AND CAREFULLY BEFORE SIGNING.**

[*Id.* at 4 (emphasis in original).] Nancy Ford initialed the Agreement immediately after this passage. Signing the Agreement was not a condition of Eugene's admission to Christian Heights. [*Id.* at 1.]

Nancy signed the Agreement on Eugene's behalf pursuant to a 2006 general durable power of attorney (POA). *See* [DN 1-4.] By executing the POA, Eugene vested Nancy with "full power . . . to transact, handle, and dispose of all matters affecting me and[/]or my estate in any possible way." [*Id.* at 1.] The POA goes on to list several specific delegations of authority, including the power "[t]o make contracts" and "to make all decisions regarding my health care and medical treatment." [*Id.* at 1-2.]

After Nancy and Tammy filed suit in Christian Circuit Court, Plaintiffs initiated this action. They seek to enforce the Agreement and compel Defendants'

3

claims in the state action to arbitration. Defendants oppose arbitration and seek dismissal of Plaintiffs' complaint.

## II. Discussion

As this Court recently recognized, Defendants' arguments are not novel. *GGNSC Louisville Mt. Holly, LLC v. Turner*, No. 3:16-CV-00149-TBR, 2017 WL 537200, at *3 (W.D. Ky. Feb. 9, 2017). Rather, each argument has been raised before, and rejected by, multiple federal district judges sitting in this Commonwealth. *See id.* (listing cases). Defendants have presented the Court with no compelling reason why it should depart from this precedent. Therefore, as more fully explained below, Defendants' motion to dismiss must be denied. However, under Kentucky law, Defendants' wrongful death and loss of consortium claims belong to Defendants rather than Eugene Ford's estate, and are therefore not subject to arbitration.

### A. Motion to Dismiss

In their motion, Defendants assert several grounds for dismissal. Many of their arguments overlap with those raised in their response to Plaintiffs' motion to compel arbitration. The Court will address Defendants' jurisdictional arguments in considering their motion to dismiss, as Defendants' arguments regarding the Agreement's validity are more appropriately considered as they relate to Plaintiffs' motion.

(1) *Subject-Matter Jurisdiction*

First, Defendants argue the Court lacks subject-matter jurisdiction over this action. The parties agree that Plaintiffs' complaint does not state a cause of action giving rise to federal question jurisdiction under 28 U.S.C. § 1331. They also agree that the parties before the Court are completely diverse. Defendants claim, however, that Plaintiffs failed to join a necessary party – Tammy Workman, the nursing home administrator at Christian Heights. Workman is a named defendant in the state suit and a Kentucky resident. [DN 1-3 at 2.] Citing *Vaden v. Discover Bank*, 556 U.S. 49 (2009), Defendants argue the Court should "look through" to the underlying dispute between the parties. And because Workman owed Eugene Ford common-law and statutory duties of care, Defendants say, she is also an indispensable party to this action that destroys diversity jurisdiction under 28 U.S.C. § 1332.

In *Vaden*, the Supreme Court held that in considering petitions to compel arbitration arising under § 4 of the Federal Arbitration Act (FAA), the district court possesses jurisdiction "only if, 'save for' the [arbitration agreement], the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." *Vaden*, 556 U.S. at 66. However, the Court limited its holding to cases involving federal question jurisdiction. *Id.* at 62. As this Court and numerous others have held, the "look through" doctrine does not apply when diversity of citizenship supplies the basis for the district court's jurisdiction. *See, e.g., Northport Health Servs. of Ark. v. Rutherford*, 605 F.3d 483, 489-91 (8th Cir.

5

2010); *GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-cv-902-DJH, 2016 WL 815295, at *2 (W.D. Ky. Feb. 29, 2016); *GGNSC Frankfort, LLC v. Tracy*, No. 14-30-GFVT, 2015 WL 1481149, at *3 (E.D. Ky. Mar. 31, 2015); *Sun Heathcare Grp., Inc. v. Dowdy*, No. 5:13-CV-0169, 2014 WL 790916, at *1 (W.D. Ky. Feb. 26, 2014).

Neither must this case be dismissed for failure to join Workman as an indispensable party to this case. Workman's mere presence in the state court action does not make her indispensable here. *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 203-04 (6th Cir. 2001). Further, Workman is not an indispensable party under Rule 19, because here, the Court is able to "accord complete relief among [the] existing parties," and her interest in the case is the same interest possessed by the named Plaintiffs. Fed. R. Civ. P. 19(a)(1)(A)-(B). Because Workman is not an indispensable party to this action, the Court need not address Rule 19(b). *Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 264-65 (6th Cir. 2009). This action may proceed in Workman's absence. *See, e.g.*, *GGNSC Louisville St. Matthews v. Madison*, No. 3:16-CV-00830-TBR, 2017 WL 2312699, at *4 (W.D. Ky. May 26, 2017); *Watkins*, 2016 WL 815295, at *2-3; *Diversicare of Nicholasville, LLC v. Lowry*, 213 F. Supp. 3d 859, 862-65 (E.D. Ky. 2016); *GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 WL 6796421, at *3-4 (W.D. Ky. Dec. 19, 2013).

(2) Colorado River *Abstention*

Defendants next argue that even if the Court possesses subject-matter jurisdiction over this action, it should abstain from exercising that jurisdiction

6

pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). In *Colorado River*, the Supreme Court recognized that while "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court," the "general principle is to avoid duplicative litigation" between parallel suits in federal and state court. *Id.* at 817. However, the Court characterized this doctrine as "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813.

The Sixth Circuit has set forth eight factors to be considered by the Court in determining whether it should exercise *Colorado River* abstention.[2] *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002). Other courts have thoughtfully considered these factors in this same context, concluding they weigh heavily against abstention. *See, e.g.*, *Madison*, 2017 WL 2312699, at *4-5; *Preferred Care, Inc. v. Howell*, 187 F. Supp. 3d 796, 805-07 (E.D. Ky. 2016); *Watkins*, 2016 WL 815295, at *3-4; *Tracy*, 2015 WL 1481149, at *7-9.[3] This case is no different.

---

[2] The eight factors to be considered are

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Great Earth*, 288 F.3d at 886.

[3] On this point, Defendants rely upon *Preferred Care of Delaware, Inc. v. Vanarsdale*, 152 F. Supp. 3d 929 (E.D. Ky. 2016), *appeal docketed*, No. 16-5209 (6th Cir. Feb. 26, 2016), where this Court's sister court abstained in a similar case based upon *Colorado River*. While this Court respects the

The Court possesses subject-matter jurisdiction and need not abstain from exercising it. Accordingly, Defendants' motion to dismiss [DN 7] is DENIED.

B. Motion to Compel Arbitration

Plaintiffs move to compel arbitration pursuant to § 4 of the Federal Arbitration Act. The FAA codifies "a national policy favoring arbitration when the parties contract for that mode of dispute resolution," *Preston v. Ferrer*, 552 U.S. 346, 349 (2008), and puts arbitration agreements "upon the same footing as other contracts," *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). The statute establishes a procedural framework applicable in both federal and state courts, and also mandates that substantive federal arbitration law be applied in both. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995); *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).

Section 3 of the FAA permits a party seeking to enforce an arbitration agreement to request that litigation be stayed until the terms of the arbitration agreement have been fulfilled. 9 U.S.C. § 3. Before compelling arbitration, the Court "must engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). This review requires the Court to determine first whether "a valid agreement to arbitrate exists between the parties," and second whether "the specific dispute falls

---

decision reached by the *Vanarsdale* court, the overwhelming weight of authority in both the Eastern and Western Districts of Kentucky is to the contrary.

within the substantive scope of the agreement." *Id.* (quoting *Javitch*, 315 F.3d at 624). "Because arbitration agreements are fundamentally contracts," the Court must "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)).

(1) *Interstate Commerce*

Defendants first claim the Agreement fails to satisfy the FAA's requirement that the arbitration contract must evidence a transaction involving interstate commerce. 9 U.S.C. § 2. The Supreme Court has interpreted the phrase "involving commerce" in the FAA as signaling the broadest permissible exercise of Congress' Commerce Clause power. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Based upon that interpretation, this Court has found on multiple prior occasions that nursing home admission agreements implicate interstate commerce because the food, medicine, and supplies used by nursing homes travel through interstate channels. *See Life Care Centers of Am., Inc. v. Estate of Neblett*, No. 5:14-CV-00124-TBR, 2014 WL 5439623, at *6-7 (W.D. Ky. Oct. 22, 2014); *Dowdy*, 2014 WL 790916, at *11-12; *Warner*, 2013 WL 6796421, at *7-8. Additionally, Defendants' argument is belied by the allegations contained in their state court complaint, wherein they claim foreign entities owned, operated, managed, controlled, and provided services for the nursing home. *See* [DN 1-3.] The

9

arbitration agreement at issue in this case plainly reflects a transaction in interstate commerce.

(2) *Power of Attorney*

Next, Defendants argue the Agreement is unenforceable because Eugene Ford's power of attorney did not grant Nancy Ford the authority to enter into arbitration agreements on Eugene's behalf. Their argument is based upon the Kentucky Supreme Court's holding in *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 237 (Ky. 2015), that powers of attorney must contain language specifically authorizing the representative to waive the principal's right to a trial by jury. However, this Court (and others) subsequently recognized that the rule announced in *Whisman* violated the FAA by singling out arbitration agreements for differential treatment. *See, e.g.*, *Preferred Care of Delaware, Inc. v. Crocker*, 173 F. Supp. 3d 505, 519-20 (W.D. Ky. 2016). The United States Supreme Court recently adopted this view in *Kindred Nursing Centers L.P. v. Clark*, 581 U.S. ___ (2017). In *Kindred*, the Court held that "[t]he Kentucky Supreme Court's clear-statement rule . . . fails to put arbitration agreements on an equal plane with other contracts." *Id.*, slip op. at 5. "Such a rule," the Court said," is too tailor-made to arbitration agreements . . . to survive the FAA's edict against singling out those contracts for disfavored treatment." *Id.*, slip op. at 6.

Following *Kindred*, then, the proper inquiry is whether the grant of authority contained in the power of attorney is "sufficiently broad to cover executing an arbitration agreement." *Id.*, slip op. at 9. Here, the POA vests Nancy with "full

power . . . to transact, handle, and dispose of all matters," including the power "[t]o make contracts." [DN 1-4 at 1-2.] This language unquestionably encompasses the power to enter into an arbitration agreement.

(3) *Unconscionability*

Defendants next contend the Agreement is procedurally and substantively unconscionable because it was "likely presented . . . within a lengthy stack of admissions paperwork," because "there is an obviously gross disparity of bargaining power between the parties," and because the arbitration rules of procedure allow for only limited discovery. [DN 12 at 8-9.] Unconscionability comes in two varieties, procedural and substantive. Procedural unconscionability "pertains to the process by which an agreement is reached." *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 341 n.22 (Ky. Ct. App. 2001). In contrast, substantive unconscionability "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Id.* (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)).

The Supreme Court of Kentucky has said that "[a]dhesion contracts," including ones containing arbitration clauses, "are not *per se* improper." *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 576 (Ky. 2012). In previous cases, this Court has considered and rejected the same arguments raised by Defendants. *See Preferred Care of Delaware, Inc. v. Hopkins*, No. 5:15-CV-00191-GNS-LLK, 2016 WL 3546407, at *4-5 (W.D. Ky. 2016); *Arnold v. Owensboro Health Facilities, L.P.*, No. 4:15-CV-00104-JHM, 2016 WL 502601, at *4-5 (W.D. Ky. Feb. 8, 2016)

11

(collecting cases). Rather, Defendants' arguments, at their core, "are nothing more than objections to arbitration agreements *in general*, and therefore directly contradict the policy embodied in the FAA." *Brookdale Sr. Living, Inc. v. Stacy*, 27 F. Supp. 3d 776, 788 (E.D. Ky. 2014) (emphasis in original). The arbitration agreement at issue in this case is neither procedurally nor substantively unconscionable.

(4) *Lack of Complete and Definite Terms*

In passing, Defendants argue the Agreement "does not sufficient [sic] state the parties who are alleged to be bound." [DN 12 at 7.] They point out, correctly, that the Agreement does not explicitly name any of the Plaintiffs in this case. *See* [DN 1-2.] Under Kentucky law, a contract, including a contract to arbitrate, must contain "definite and certain terms" to be enforceable. *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997). The identity of the parties is, of course, an essential element of a contract. *See Cox v. Ford*, No. 2014-CA-000961-MR, 2015 WL 9413404, at *2 (Ky. Cr. App. Dec. 23, 2015) (citing *King v. Ohio Valley Fire & Marine Ins. Co.*, 280 S.W. 127, 129 (Ky. 1926)). In *Cox*, the Kentucky Court of Appeals held that "[i]n situations where an authorized agent signs a written agreement in the name of a company, but the company's name does not appear in the body of the contract, it is improper for the trial court to determine, as a matter of law, that the company was not a party to the contract." *Id.* (citing *Miller v. Johns*, 163 S.W.2d 9, 11 (Ky. 1942)).

Here, the Agreement says it "is entered into by KYCH (hereinafter referred to as the 'Center'), a nursing facility, and Eugene Ford, a Resident at the Center." [*Id.* at 1.] Plaintiffs state (and Defendants do not contest) that "KYCH" is an abbreviation for Kentucky Christian Heights, the doing-business-as name of Pembroke Health Facilities, L.P. – a named Plaintiff in this case. Ashley West, the nursing home's business manager, signed on the facility's behalf. [*Id.* at 5.] The Court is satisfied that West's signature bound Plaintiffs, as their agent, to arbitration. The parties are sufficiently identified and definite as a matter of law. *See Crocker*, 173 F. Supp. 3d at 528.

(5) *Wrongful Death and Loss of Consortium*

Lastly, Defendants claim that their wrongful death and Nancy Ford's loss of spousal consortium claims may not be compelled to arbitration. In *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 600 (Ky. 2012), the Kentucky Supreme Court held that because a wrongful death claim belongs to the beneficiary under Kentucky's wrongful death statute, KRS 411.130(2), wrongful death beneficiaries are not bound by the decedent's agreement to arbitrate. Furthermore, the Sixth Circuit concluded in *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 197-99 (6th Cir. 2016), that the rule announced in *Ping* does not run afoul of the FAA. Defendants' wrongful death claim in state court belongs to defendants, not Eugene Ford's estate. The Agreement does not bind them to arbitration on that claim. Likewise, a claim for loss of consortium accrues directly to the spouse and it may be asserted directly by him or her. KRS 411.145; *Martin v. Ohio County Hosp. Corp.*,

13

295 S.W.3d 104, 108 (Ky. 2009). Nancy Ford's loss of spousal consortium claim is also not subject to arbitration.

## C. Remedy

As explained above, all of Defendants' claims against Plaintiffs are subject to arbitration, save for the wrongful death and loss of spousal consortium claims. The remaining question, then, is the proper remedy. Plaintiffs seek an injunction barring Defendants from further pursing the underlying litigation in Christian Circuit Court, including the wrongful death and loss of spousal consortium claims. Defendants argue that the Anti-Injunction Act, 28 U.S.C. § 2283, prohibits such an order.

The Federal Arbitration Act "does not specifically authorize federal courts to stay proceedings pending in state courts." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 894 (6th Cir. 2002) (citations omitted). Accordingly, "the district court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti-Injunction Act." *Id.* In turn, the Anti-Injunction Act provides, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C § 2283.

In *Great Earth*, after a trial court concluded that the parties' dispute was subject to arbitration, the Sixth Circuit held that "[a]n injunction of the state proceedings [was] necessary to protect the final judgment of the district court."

*Great Earth*, 288 F.3d at 894. Such is the case here. Having concluded that Nancy Ford entered into a binding arbitration agreement with Christian Heights on Eugene Ford's behalf, the injunction Plaintiffs request "properly falls within the exception for injunctions 'necessary to protect or effectuate [this Court's] judgments.'" *Id.* (quoting 28 U.S.C. § 2283). "Otherwise, [Defendants] would be permitted to circumvent [the] arbitration agreement and in doing so, circumvent this Court's judgment that [Defendants] be compelled to arbitrate [their] claims." *Stacy*, 27 F. Supp. 3d at 792. This Court has often taken this same approach in the past, and it does so again today. *See, e.g.*, *GGNSC Louisville Mt. Holly LLC v. Stevenson*, No. 3:16-CV-00423-JHM, 2016 WL 5867427, at *4 (W.D. Ky. Oct. 6, 2016); *Watkins*, 2016 WL 815295, at *7; *Warner*, 2013 WL 6796421, at *10. Of course, Defendants are not enjoined from further pursuing the wrongful death and loss of spousal consortium claims, because those claims are not subject to arbitration.

### IV. Conclusion and Order

For the foregoing reasons, IT IS HEREBY ORDERED:

Defendants' motion to dismiss [DN 7] is DENIED. Plaintiffs' motion to compel arbitration [DN 11] is GRANTED IN PART and DENIED IN PART. Defendants are ENJOINED from further pursuing their negligence, medical negligence, and corporate negligence claims against Plaintiffs in the Christian Circuit Court action styled *Ford, et al. v. Pembroke Health Facilities, L.P., d/b/a/ Christian Heights Nursing and Rehabilitation Center, et al.*, Civil Action No. 16-CI-

00846. The parties are COMPELLED to arbitrate those claims. Counsel shall promptly inform the Christian Circuit Court of this Memorandum Opinion and Order.

This proceeding is STAYED until the conclusion of the ordered arbitration. The parties shall inform the Court when arbitration is complete.

CC: Counsel of Record